1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT

9               EASTERN DISTRICT OF CALIFORNIA

10

11   JAMES DAHLIN, et al.,                    No. 2:17-cv-02585-MCE-AC

12               Plaintiffs,

13         v.                                 **MEMORANDUM AND ORDER**

14   ROSEMARY FRIEBORN, et al.,

15               Defendants.

16

17         By way of this action, Plaintiffs James and Kimberly Dahlin (the "Dahlins"), and

18   Toby and Martina Tippets (the "Tippets," and collectively with the Dahlins, "Plaintiffs")

19   assert 11 federal and state causes of action against various municipal and non-

20   municipal Defendants stemming from the seizure of various items and 57 dogs from the

21   Dahlins' property, where they own and operate a dog breeding business.[1]

22         Presently before the Court are three individually briefed Motions to Dismiss

23   Plaintiffs' First Amended Complaint ("FAC"), ECF No. 71, filed by the following groups of

24   Defendants: (1) City of Auburn, Auburn Police Department, Community Service Officer

25   Debby Nelson, Police Officer Phillip Isetta, Police Officer Angela McCollough, and Police

26   Sergeant Huey Tucker (hereinafter collectively "City Defendants"), ECF No. 80 ("City

27   Mot."); (2) Rosemary Frieborn, Curt Ransom, the Humane Society of the Sierra Foothills,

28
_____
[1] The Tippets rent a home on the Dahlins' property.

1

Inc. ("HSSF"), Marilyn Jasper, Cassie Reeves, Katie Newman, Sherry Couzens, Michael Crosson, Friends of Auburn/Tahoe Vista-Placer County Animal Shelter, Inc. ("Friends of the Animal Shelter"), Friends of Placer County Animal Shelter, Friends of Auburn/Tahoe Vista Placer County Animal Shelter, Edward Fritz, and Shana Laursen (hereinafter collectively "Non-Municipal Defendants"), ECF No. 81 ("Non-Municipal Mot."); and (3) Dr. Thomas Sheriff, DVM, ECF No. 86 ("Sheriff Mot."). For the reasons that follow, each Motion to Dismiss is GRANTED.[2]

## BACKGROUND

Plaintiffs started a Havanese dog breeding business in 1997. FAC ¶ 29. In February 2001, Plaintiffs purchased a 35-acre property in Auburn, California, to expand this business. FAC ¶ 45.

On October 28, 2016, an Auburn police officer contacted Plaintiffs regarding a barking complaint, which led Plaintiffs to schedule bark softening surgery for twenty to thirty dogs with Dr. Sheriff. FAC ¶¶ 54, 57. After several of these surgeries were performed, Officer Nelson of the Auburn Police Department visited Plaintiffs' property on November 15, 2016, to investigate Plaintiffs' mass scheduling of those surgeries. FAC ¶¶ 59, 60. Nelson subsequently disclosed information on Plaintiffs' dog breeding operation to Humane Officer Frieborn. FAC ¶ 65. Apparently, Nelson and Frieborn had concerns that the dogs at Plaintiffs' property were being neglected. Non-Municipal Mot., ECF No. 81, at 5.

Just over one week later, on November 23, 2016, Frieborn visited Dr. Sheriff to request treatment records of Plaintiffs' dogs, which Dr. Sheriff refused to provide without a warrant. FAC ¶ 67. During the course of this visit, Frieborn also requested these records from two of Dr. Sheriff's veterinary technicians—both of whom similarly refused.

---

[2] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

FAC ¶ 69.  The veterinary technicians did, however, provide signed declarations detailing the technicians' suspicions that Plaintiffs' dogs were being neglected.  FAC ¶ 113; City Mot., ECF No. 80-2 at 10–13.[3]  Conversely, Dr. Sheriff provided a declaration stating Plaintiffs' dogs were in good health.  FAC ¶ 68.

Thereafter, Frieborn submitted the veterinary technicians' affidavits to support the issuance of a warrant to search Plaintiffs' property.  FAC ¶ 73.  The search warrant provided seven categories of items which could be seized during the search, one of which included seizing any "animal . . . found in a neglected and/or abused condition and all animals kept in such a way to be further subjected to neglect and/or abuse."  City RJN, ECF No. 80-2, at 16.

After receipt of the warrant, Frieborn coordinated with the Auburn Police Department and various Friends of the Humane Society to conduct a search, which occurred on December 9, 2016.  FAC ¶ 52.  During the execution of the warrant, Plaintiffs claim that they were told to remain in sight of the officers.  FAC ¶ 95.  However, Plaintiffs were permitted to leave the property.  Id.  During the course of the 12-hour search, 57 Havanese dogs and various documents belonging to Plaintiffs were seized.  FAC ¶ 96.

A hearing was subsequently held concerning the seizure of Plaintiffs' animals.  This hearing outlined that, as a condition of returning the seized dogs, Plaintiffs were required to pay the veterinary and boarding costs of the animals.  Once the state court's

///

---

[3] City and Non-Municipal Defendants each request that the Court take judicial notice of five documents, which include: (1) the Affidavit of Search Warrant (Ex. A to City RJN; Ex. A to Non-Mun. RJN); (2) the Search Warrant (Ex. B to City RJN; Ex. B to Non-Municipal RJN); (3) the Order for Release (Ex. C to City RJN; Ex. C to Non-Mun. RJN); (4) the Order After Hearing (Ex. D to City RJN; Ex. D to Non-Mun. RJN); and (5) the Notice of Decline to Prosecution (Ex. E to City RJN; Ex. E to Non-Mun. RJN).  See City RJN, ECF No. 80-2; Non-Mun. RJN, ECF No. 82.  Non-Municipal Defendants also ask that the Court take judicial notice of the letter to Judge Pineschi.  Non-Mun. RJN, ECF No. 82, Ex. F, at 32-33.  The Court may take judicial notice of documents in the public record if the facts are not "subject to reasonable dispute."  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001), overruled on other grounds, Galbraith v. Cnty. of Santa Clara, 307 F. 3d 1119, 1125 (9th Cir. 2002); see also Fed. R. Evid. 201(b).  City Defendants and Non-Municipal Defendants RJNs are GRANTED as to Exhibits A, B, C, and D.  However, because the Court did not need to consider the County DA's letter or the letter to Judge Pineschi, the requests for judicial notice of these documents are DENIED.

fee deadline had passed with no payment, the dogs were released to the Humane Society's care.  Thereafter, Plaintiffs filed the present action.

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Charles

4

Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**ANALYSIS**

As an initial matter, the Court notes that Plaintiffs' FAC suffers from a lack of clarity and presents significant organizational deficiencies, which makes deciphering

///

5

which facts apply to particular claims and specific Defendants difficult.  When the Court

is unable to decipher Plaintiffs' factual contentions, this inability is noted.

The FAC sets forth 11 Causes of Action ("COA") arising under both federal and

state law: (1) violation of the Fourteenth Amendment; (2) violation of the Fourth

Amendment for unreasonable search and seizure; (3) violation of Veterinarian-Patient-

Client Confidentiality pursuant to California Business and Professions Code ("B&P")

Section 4857; (4) Monell Claims; (5) Unreasonable Search and Seizure under Article 1

to Section 13 of the California Constitution; (6) False Imprisonment; (7) Intentional

Infliction of Emotional Distress ("IIED"); (8) Conversion; (9) Trespass; (10) Negligence;

and (11) Interference with Contract.  The Court first addresses Plaintiffs' federal COAs,

then turns to the state law claims.

## A.    Federal Claims

### 1.    First COA (Fourteenth Amendment)

Plaintiffs bring a due process claim under the Fourteenth Amendment based on

the lack of a pre-seizure hearing.[4]  A § 1983 claim based upon procedural due process

requires both (1) a deprivation of a liberty or property interest protected by the

Constitution, and (2) a denial of adequate procedural protections. See Wilkinson v.

Austin, 545 U.S. 209, 221 (2005); see also Brewster v. Bd. of Educ. of the Lynwood

Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998).  To have a property interest, a

person must have a legitimate claim of entitlement to the property.  See Bd. of Regents

of State Colls. v. Roth, 408 U.S. 564, 577 (1972).  "Property interests, of course, are not

created by the Constitution.  Rather they are created and their dimensions are defined

by existing rules or understandings that stem from an independent source such as state

_____

[4]  The Court is unable to determine which Defendants that Plaintiffs claim violated their rights to due process.  Under the caption to the First COA, Plaintiffs assert violations of the Fourteenth Amendment against "Defendants Frieborn, Fritz, Municipal Employees [Nelson and Isetta]".  FAC, ECF No. 71, at 16. Yet, the First COA's initial paragraph alleges that, "Defendants Frieborn, Ransom, Jasper, Doe 1-125, and Fritz conspired to harm Plaintiffs . . . ." FAC ¶ 77.  Because the allegations within the FAC fail to state a viable due process claim against any defendant, the Court need not struggle with this discrepancy here. Nevertheless, if Plaintiffs choose to amend these claims, they are advised to plead with clarity on the pertinent defendants for each COA.

law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id.

If a constitutionally protected property interest exists, the government must provide the deprived individual due process in the form of notice and an opportunity to respond. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). Procedural Due Process has no technical definition and must be analyzed according to the particular surrounding circumstances. See Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 895 (1961). To determine what procedural due process is constitutionally due under the Fifth or Fourteenth Amendments to the United States Constitution, courts primarily look to whether two elements have been established: "(1) a protectible liberty or property interest; and (2) a denial of adequate procedural protections." Thornton v. City of St. Helens, 425 F.3d 1158, 1164 (9th Cir. 2005). Due process in this context "is a flexible concept that varies with the particular situation." Shinault v. Hawks, 782 F.3d 1053, 1057 (9th Cir. 2015). The fundamental requirement is that the person to be deprived of a property interest "be given an opportunity to be heard at a meaningful time and in a meaningful manner." Buckingham v. Sec'y of the USDA, 603 F.3d 1078, 1082 (9th Cir. 2010).

The Court first addresses Plaintiffs' faulty premise that they were entitled to a pre-seizure hearing, instead of only a post-seizure one. Plaintiffs point to California Penal Code § 597.1(g), which requires "a hearing prior to any seizure or impoundment of the animal." FAC ¶ 125. However, a warrant provided the basis for the seizure of Plaintiffs' animals, thus it was not "authorized by [§ 597.1]," see § 597.1 (g). Accordingly, Plaintiffs were not entitled to a pre-seizure hearing.[5] Thus, the First COA is DISMISSED with leave to amend.

///

---

[5] While unclear in the FAC, it seems Plaintiffs were provided a hearing which outlined their options to regain possession of their dogs, including paying boarding fees and veterinary costs. See City RJN, ECF 80-2, at 23. Thus, it would appear Plaintiffs were afforded due process in connection with this hearing.

### 2. Second COA (Fourth Amendment)

Plaintiffs again name no specific Defendants for their Second COA for violations of the Fourth Amendment but allege that "[t]he search party included Frieborn, Ransom, Jasper, Fritz, Nelson, Huey and Isetta." FAC ¶ 81. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." To establish a viable Fourth Amendment claim, a plaintiff must show not only that there was a search and seizure as contemplated by the Fourth Amendment, but also that said search and seizure was unreasonable and conducted without consent. See Rakas v. Illinois, 439 U.S. 128, 143 (1978); United States v. Rubio, 727 F.2d 786, 796-97 (9th Cir. 1983).

Governmental conduct can constitute a search for Fourth Amendment purposes in two ways. First, a search can occur when "the person invoking [Fourth Amendment] protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." Smith v. Maryland, 442 U.S. 735, 740 (1979). Under this test, the plaintiff bears the burden of showing both a subjective and objectively reasonable expectation of privacy. See United States v. Shryock, 342 F.3d 948, 978 (9th Cir. 2003); Rawlings v. Kentucky, 448 U.S. 98, 104 (1980). Second, a Fourth Amendment search can occur where the government unlawfully occupies private property for the purpose of obtaining information without consent. United States v. Jones, 565 U.S. 400, 404-05 (2012). A "seizure" occurs when there is some "meaningful interference with an individual's possessory interests in . . . property." United States v. Jacobsen, 466 U.S. 109, 113 (1984).

#### a. City Defendants

According to Plaintiffs, City Defendants illegally searched and seized their property without probable cause or a valid search warrant. FAC ¶ 81. Regarding the warrant obtained to search Plaintiffs' property, Plaintiffs allege that "[t]he pretense for obtaining the warrant were suspect and unlawful." FAC ¶ 92. However, apart from this

8

allegation being conclusory, it raises no fact showing that the search warrant was facially invalid, and the City's officers are not alleged to have participated in any alleged deception in obtaining the warrant.[6]  The FAC alleges that the City Defendants executed a warrant which was signed by a Magistrate Judge and no facts discredit the facial validity of the warrant at the time of its execution.  Accordingly, the Second COA against the City Defendants is DISMISSED with leave to amend.

### b.      Non-Municipal Defendants

According to Plaintiffs, all non-municipal parties participating in the search of their property did so unlawfully, and thus are liable for violations of their Fourth Amendment rights.  FAC ¶ 88.  Plaintiffs allege the Non-Municipal Private Defendants were "all state actors acting within their duties" when they deprived Plaintiffs of their due process rights.  FAC ¶ 88.[7]

Plaintiffs, however, fail to describe how the Non-Municipal Private Defendants acted as state actors during the search and seizure of Plaintiffs' Property.  Determining whether a private party engaged in state action is a highly factual question.  Howerton v. Gabica, 708 F.2d 380, 383 (9th Cir. 1983) (citing Burton v. Wilmington Parking Auth., 365 U.S. 715, 722 (1961)).  The FAC is devoid of any meaningful factual allegations concerning what actions the various Non-Municipal Private Defendants took during the search.  Absent sufficient facts to determine if the Non-Municipal Private Defendants acted as state actors, this Court is unable to engage in the requisite fact-based analysis on this COA.

///

---

[6] Plaintiffs' contention that seizing the dogs exceeded the warrant's scope is contrary to the express language of the warrant.  See Non-Mun. Reply ISO Mot., ECF No. 97, at 5.

[7] Non-Municipal Defendants, Frieborn, Ransom, and HSSF concede they are state actors for purposes of the present motions.  See Non-Municipal Mot., ECF No. 81, at 8.  In dispute, however, is whether the remaining Non-Municipal Defendants, Jasper, Reeves, Newman, Couzens, Crosson, Friends of the Animal Shelter, Friends of Placer County Animal Shelter, Friends of Auburn/Tahoe Vista Placer County Animal Shelter, Fritz, and Laursen are likewise state actors—the Court refers to these remaining Defendants collectively as the "Non-Municipal Private Defendants" as necessary in its analysis.

1     Additionally, similar to the City Defendants above, apart from the allegations

2   against Frieborn, the FAC shows that the remaining Non-Municipal Defendants searched

3   Plaintiffs' property pursuant to a facially valid warrant.  Plaintiffs only real supporting

4   allegation is that Frieborn obtained purportedly false and disparaging declarations from

5   the veterinary technicians by use of threats.  FAC ¶ 72.  These threats, Plaintiffs claim,

6   invalidated the warrant.  FAC ¶ 77.  However, Plaintiffs' allegations on this point are

7   entirely conclusory.  Indeed, no specification is offered on which portions of the

8   declarations were false.  Furthermore, no facts show that Ransom, Jasper, or Fritz were

9   involved in this allegedly illicit activity.[8]

10     Thus, the Second COA is DISMISSED with leave to amend against both the Non-

11  Municipal Defendants and the Non-Municipal Private Defendants.

### 3.     Fourth COA (<u>Monell</u> Claims)

13     Plaintiffs pleaded their <u>Monell</u> claims against the City of Auburn and the Auburn

14  Police Department for the actions of the City's police officers during the seizure.  FAC

15  ¶ 134.  A municipality cannot be held liable solely because it employs a tortfeasor—or, in

16  other words, a municipality cannot be held liable under [§] 1983 on a respondeat

17  superior theory."  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978) (holding a

18  local government may be held liable under § 1983 only for constitutional injuries inflicted

19  by edicts or acts that may be fairly said to represent official policy or custom).  Thus, a

20  plaintiff may state a civil rights claim against a public entity under § 1983 by showing he

21  or she has suffered a deprivation of a constitutionally protected interest, and such

22  deprivation was caused by an official policy, custom, or usage of the municipality.

23  <u>Monell</u>, 436 U.S. at 690-91; <u>Cornejo v. Cnty. of San Diego</u>, 504 F.3d 853, 855 n. 4

24  (9th Cir. 2007).

25  ///

---

27     [8] The Court notes that the moving papers tend to show that Frieborn may have omitted material
information in her warrant application to the Magistrate Judge.  <u>See</u> City Def.'s Mot., ECF No. 80-2, Ex. E.
28  However, as the FAC omits any mention of these allegations, the Court does not address these claims
here.

Monell therefore requires Plaintiffs prove: (1) they "[were] deprived of a constitutional right;" (2) the municipality "had a policy;" (3) "the policy amounted to deliberate indifference to her constitutional rights; and (4) the policy was the moving force behind the constitutional violation." Mabe v. San Bernardino, 237 F.3d 1101, 1110-11 (2001). To impose § 1983 liability on a municipality for alleged constitutional injuries, the Court must determine whether the operative complaint adequately demonstrates that the government actors acted pursuant to a policy. The Ninth Circuit has explained how this showing can be made:

> [T]here are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

Rosenbaum v. City & Cnty. of S.F., 484 F.3d 1142, 1155 (9th Cir. 2007) (citations and internal quotation marks omitted); see City of Canton v. Harris, 489 U.S. 378, 390-91 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Here, the FAC provides insufficient facts to show any official policy, custom, or other usage of municipality caused Plaintiffs' harm. While Plaintiffs claim inadequate training and policies resulted in their deprivation of rights, no City policy or custom is specifically identified, and Plaintiffs fail to address the training that the officers were supposedly deficient. Additionally, Plaintiffs identify no other instances of the City's interaction with Humane Society officers such that a "custom" with regard to their interactions could be established. As such, the Fourth COA is DISMISSED with leave to amend.

///

///

**B.     State Claims**

**1.     Third COA (Violation of Patient/Veterinarian Confidentiality)**

Plaintiffs name no specific Defendants for this cause of action, but Plaintiffs allege that "Dr. Sheriff is responsible for the breach of confidentiality by his employees, Dorer and Widmann." FAC ¶ 113. This cause of action arises under B&P Code § 4857 which provides that licensed veterinarians "shall not disclose any information concerning an animal receiving veterinary services, the client responsible for the animal receiving veterinary services, or the veterinary care provided to an animal." Cal. Bus. & Prof. Code § 4857(a). However, the statute also provides "[n]othing in this section is intended to prevent the sharing of veterinary medical information between veterinarians and peace officers, humane society officers, or animal control officers who are acting to protect the welfare of animals." Id. § 4857(d).

The allegations within the FAC undermine Plaintiffs' contentions of liability as to Dr. Sheriff. While unclear, the Court interprets Plaintiffs' arguments in the FAC to state that when asked by Frieborn about the health and safety of Plaintiffs' dogs, Dr. Sheriff refused to provide any medical records without a warrant. FAC ¶¶ 67-68. Additionally, the information provided by Dr. Sheriff fell within the expressly permitted exceptions under § 4857, which enables the sharing of veterinary medical information to an investigating humane society officer acting to protect the welfare of animals. As such, the Third COA is DISMISSED with leave to amend.[9]

**2.     Fifth COA (Unreasonable Search and Seizure)**

Plaintiffs name no specific Defendants for this cause of action but allege that they "were damage[d] and injured by the deprivation of their rights under Article 1, § 13 of the California Constitution." FAC, ¶ 151. Comparable to Fourth Amendment, Article 1, Section 13 of the California Constitution provides an individual the right "to be secure in

---

[9] Plaintiffs allege several COAs in the FAC against "all defendants." However, in their single-page Opposition to Dr. Sheriff's Motion, Plaintiffs made no attempt to address how any of the other COAs relate to Dr. Sheriff. Opp. to Sheriff Mot., ECF No. 92. Therefore, to the extent that any other COA within the FAC relates to Dr. Sheriff, they are DISMISSED with prejudice.

their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated …." Cal. Const., Art. I § 13. Further, the California Constitution provides, "a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized." Id. In analyzing the lawfulness of a search or seizure, the analysis under Article 1, Section 13 of the California Constitution parallels that of the Fourth Amendment. Lyall v. City of Los Angeles, 807 F.3d 1178, 1186 n.7 (9th Cir. 2015).

As discussed above, the allegations of the FAC establish that, acting on a facially valid warrant describing the places to be searched and items to be seized, the City Defendants, Non-Municipal Defendants, and Non-Municipal Private Defendants searched and seized property belonging to the Plaintiffs. As discussed above, this Court is unable to further analyze the potential liability of the Defendants on account of Plaintiffs' conclusory allegations. Thus, the Fifth COA is DISMISSED with leave to amend.

### 3. Sixth COA (False Imprisonment)

Again, no specific Defendants are named regarding this claim and the FAC fails to specifically identity how each of the Defendants falsely imprisoned them. Plaintiffs simply allege that, "[t]he Municipal Employees and Doe defendants and Frieborn, Ransom, Jasper, and the other Frieborn Defendants and Doe defendants were acting within the course and scope of their employment when they deprived Plaintiffs of their civil rights and property." FAC ¶ 153. Thus, it appears that Plaintiffs assert this COA against only Non-Municipal Defendants. Under California law, the elements of a claim for false imprisonment are: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." See Easton v. Sutter Coast Hosp., 80 Cal. App. 4th 485, 496 (2000); Young v. Cnty. of L.A., 655 F.3d 1156, 1169 (9th Cir. 2011).

No facts raised in the FAC suggest that Plaintiffs were not free to leave during the search. In fact, Plaintiffs admit that they were permitted to leave to attend their sons'

graduations.  FAC ¶ 95.  Plaintiffs make conclusory allegations stating "[t]he search team members intentionally subjected" Plaintiffs to "false arrest and imprisonment" by confining them.  FAC ¶ 154.  However, the execution of a search warrant permits officers to require parties present during a search to remain in sight of officers for safety purposes.  Dawson v. City of Seattle, 435 F.3d 1054, 1066 (9th Cir. 2006).  That Plaintiffs were told to remain within visible range of the officers during the search as a safety precaution does not amount to the tort of false imprisonment.  Accordingly, the Sixth COA is DISMISSED with leave to amend.

### 4.    Seventh COA (Intentional Infliction of Emotional Distress)

Plaintiffs contend that "[t]he conduct of each defendant was extreme and outrageous," FAC ¶ 158, such that an IIED claim is established.  To state a claim for IIED, Plaintiffs must show (1) Defendants' conduct was extreme and outrageous with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) Plaintiffs suffered severe or extreme emotional distress; and (3) Defendants' outrageous conduct was the actual and proximate cause of the emotional distress.  Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 1001 (1993).  Extreme and outrageous conduct is "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  Id.  "California courts have set a high bar for emotional distress claims, requiring 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'"  Lust v. State Farm Mut. Auto. Ins. Co., No. 2:11-CV-02051-MCE, 2012 WL 592060, at *3 (E.D. Cal. Feb. 22, 2012) (quoting Kelley v. Conco Cos., 196 Cal. App. 4th 191, 215-16 (2011)).

Here, Plaintiffs fail to meet the high bar set for emotional distress claims.  The conclusory statement that "[t]he conduct of each defendant was extreme and outrageous" provides no indication of individuals engaging in extreme or outrageous conduct during the course of the search.   FAC ¶ 158.  Nothing in the FAC raises to an

///

extreme or outrageous level such that an IIED claim is warranted.  As such, the Seventh COA is DISMISSED with leave to amend.

### 5.     Eighth COA (Conversion)

Plaintiffs bring their Eighth COA for Conversion against all Defendants.  FAC ¶ 164.  To establish conversion, a plaintiff must show: (1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages.  <u>Tyrone Pac. Intern., Inc. v. MV Eurychili</u>, 658 F.2d 664, 666 (9th Cir. 1981).  Because conversion is a strict liability tort, a defendant's "good faith, lack of knowledge, motive, or intent are not relevant" in establishing a claim.  <u>Joe Hand Promotions, Inc. v. Roseville Lodge No. 1293</u>, 161 F. Supp. 3d 910, 916 (E.D. Cal. 2016).

While unclear, the Court interprets Plaintiffs' allegation to be that dogs were taken by Defendants Nelson and Laursen specifically.  FAC ¶¶ 101, 110.  Plaintiffs, however, fail to provide details on when these Defendants allegedly took possession of the dogs.  After being seized, the FAC established that Plaintiffs were given the opportunity to reclaim their dogs during a state proceeding via the payment of the required veterinary care and boarding costs.  ECF No. 80-2, at 23.[10]  After the non-payment, the Magistrate Judge "released" the dogs to the Humane Society to be rehomed; this release resulted in the termination of Plaintiffs' property interests in the dogs.  ECF No. 80-2, at 26.

As pleaded, the Court is unable to determine if conversion has taken place, as it is unclear when Defendants Nelson and Laursen allegedly took possession of the dogs.  If Defendants' possession took place after the termination of Plaintiffs' property interests, Plaintiffs' COA fails as a matter of law.  Thus, the Eighth COA is DISMISSED with leave to amend.

### 6.     Ninth COA (Trespass)

Plaintiffs "bring this claim against all defendants."  FAC ¶ 170.  Trespass is the "unlawful interference" with the possession of property.  5 Witkin, <u>Summary of Cal. Law</u>

---

[10]  Notably, the bill for the 57 seized dogs amounted to approximately $41,282.

(10 ed. 2005), Torts, § 693, p. 1018. To bring a cause of action for trespass of property, Plaintiffs must show "1. Plaintiff owned the property; 2. Defendant intentionally, recklessly or negligently entered plaintiff's property; 3. Plaintiff did not give permission for the entry; 4. Plaintiff was actually harmed; and 5. Defendant's entry was a substantial factor in causing plaintiff's harm." Vega v. JP Morgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1119 (E.D. Cal. 2009) (citing CACI 2000, p. 1159 (2009)).

A police officer may enter a plaintiff's home without committing trespass while executing a valid search warrant. Brunette v. Humane Soc'y, 294 F.3d 1205, 1210 (9th Cir. 2002). Additionally, Humane Society officers engage in quasi-public functions and are "invested with authority to investigate reports of animal cruelty, impound animals, place liens on property, and bring criminal charges against citizens." Cal. Corp. Code § 14502; Brunette, 294 F.3d at 1208.

As City Defendants and Non-Municipal Defendants acted under a warrant to search and seize Plaintiffs' property, no trespass occurred. Regarding the Non-Municipal Private Defendants, absent clearly pleaded facts establishing that these Defendants were state actors during the search of Plaintiffs' property, this Court is unable to determine if these Defendants committed trespass. Therefore, the Ninth COA is DISMISSED with leave to amend.

### 7. Tenth COA (Negligence)

To establish a claim of negligence, Plaintiffs must show (1) the existence of a duty to exercise due care, (2) breach of that duty, (3) causation, and (4) damages. See Merrill v. Navegar, Inc., 26 Cal. 4th 465, 500 (2001).

Plaintiffs name no specific Defendant as to this COA and provide a merely conclusory reiteration of the elements of the tort of negligence in the FAC. Thus, Plaintiffs have failed to allege any facts to support this cause of action against any Defendant. See Twombly, 550 U.S. at 570. As such, the Tenth COA is DISMISSED with leave to amend.

///

### 8. Eleventh COA (Interference with Contract)

Plaintiffs assert a claim for Interference with Contract against unspecified Defendants. Under California law, the elements of intentional interference with contractual relations are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Pac. Gas & Elect. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990).

Plaintiffs allege all Defendants "permanently deprived" them of "all of their dogs including those they had under contract for sale." FAC ¶ 76. Plaintiffs further allege 23 of the 30 puppies seized were under contract and "sold to private customers." FAC ¶ 182. However, apart from these allegations, the FAC contains no facts establishing that any specific Defendant had "knowledge" of Plaintiffs' contracts to sell their Havanese dogs. Additionally, the pleaded facts show that some Defendants coordinated to fulfill at least 13 of Plaintiffs' purchase contracts with third-party purchasers. FAC ¶ 182. While Plaintiffs allege that at least 10 puppies were "under contract for sale [and] were never returned," no information is pleaded as to which dog contract was interfered with, or which Defendant caused the interference. Accordingly, the Eleventh COA is DISMISSED with leave to amend.

### CONCLUSION

For the reasons stated above, the City Defendants' Motion to Dismiss (ECF No. 80) is GRANTED with leave to amend. The Non-Municipal Defendants' Motion to Dismiss (ECF No. 81) is also GRANTED with leave to amend. Dr. Sheriff's Motion to Dismiss Plaintiffs' Third Cause of Action (ECF No. 86) is GRANTED with leave to amend. Dr. Sheriff's Motion to Dismiss Plaintiffs' remaining Causes of Action is GRANTED without leave to amend. As to the causes of action where the Court grants

leave to amend, Plaintiffs may, but are not required to, file an amended complaint not later than twenty (20) days after the date this Memorandum and Order is filed electronically.  If no amended complaint is filed within said twenty (20)-day period, Plaintiffs' claims will be dismissed without leave to amend upon no further notice to the parties.

IT IS SO ORDERED.

Dated:  September 30, 2019

MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE