UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES DAHLIN, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>ROSEMARY FRIEBORN, et al.,<br><br>    Defendants. | No. 2:17-cv-02585-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

   Through the present action, Plaintiffs James and Kimberly Dahlin (the "Dahlins"), and Toby and Martina Tippets (the "Tippets," and collectively with the Dahlins, "Plaintiffs") assert eleven federal and state causes of action against various municipal and non-municipal Defendants stemming from the seizure of various items and 57 dogs from the Dahlins' property, where they own and operate a dog breeding business.[1] Plaintiffs' First Amended Complaint ("FAC") was dismissed with leave to amend (Mem. and Order, ECF No. 99), and they subsequently filed the Second Amended Complaint (ECF No. 103) ("SAC").

   Presently before the Court are three individually briefed Motions to Dismiss Plaintiffs' SAC filed by the following groups of Defendants: (1) City of Auburn, Auburn Police Department, Community Service Officer Debby Nelson, Police Officer Phillip

---

[1] The Tippets rent a home on the Dahlins' property.

Isetta, Police Officer Angela McCollough, and Police Sergeant Huey Tucker (hereinafter collectively "City Defendants"), ECF No. 106 ("City Mot."); (2) Dr. Thomas Sheriff, DVM, ECF No. 107 ("Sheriff Mot."); and (3) Rosemary Frieborn, Curt Ransom, the Humane Society of the Sierra Foothills, Inc. ("HSSF"), Marilyn Jasper, Cassie Reeves, Katie Newman, Sherry Couzens, Michael Crosson, Friends of the Auburn/Tahoe Vista-Placer County Animal Shelter, Inc. ("Friends of the Animal Shelter"), Friends of Placer County Animal Shelter, Friends of Auburn/Tahoe Vista Placer County Animal Shelter, Edward Fritz, and Shana Laursen (hereinafter collectively "Non-Municipal Defendants"), ECF No. 108 ("Non-Municipal Mot."). For the reasons that follow, each Motion to Dismiss is GRANTED.[2]

## BACKGROUND[3]

Plaintiffs operate a Havanese dog breeding business on a 35-acre property in Auburn, California (the "Property"). On October 28, 2016, Police Officer Phillip Isetta of the Auburn Police Department contacted the Dahlins regarding an animal abuse complaint made by Scott Lechner who was at the North Fork Veterinary Clinic when 20 to 30 of the Dahlins' dogs were brought in for bark softening surgeries. Lechner claimed that the kennels used to transport the dogs were unclean and in need of repair. A couple days later, Lechner contacted the Auburn Police Department again and he informed Officer Debby Nelson that the cages were too small and unsanitary and that the dogs were kept in those kennels and unable to walk.[4] Following the complaint, the

///

---

[2] Because oral argument would not be of material assistance, the Court ordered these matters submitted on the briefs. E.D. Local Rule 230(g).

[3] Unless otherwise noted, the facts are taken from Plaintiffs' SAC and the parties' respective briefs on the pending Motions.

[4] Plaintiffs further allege that Lechner talked to veterinary technicians and staff about their opinions on the Dahlins' dogs, leading him to the conclusion that the Dahlins were operating a puppy mill and neglecting their dogs.

Dahlins scheduled bark softening surgeries for ten dogs, which were performed by Dr. Sheriff.

Nelson visited Plaintiffs' Property on November 15, 2016, to investigate Lechner's complaint and Plaintiffs' mass scheduling of bark softening surgeries. During her visit, Nelson saw three large dogs in the front yard and four dogs inside the Dahlins' house, but she found no evidence of abuse or neglect. However, Nelson did not ask to see the breeding stock. Nelson subsequently disclosed information on the Dahlins' dog breeding operation to Lechner and Humane Officer Rosemary Frieborn.

On November 23, 2016, Frieborn visited Dr. Sheriff to request treatment records of Plaintiffs' dogs, which Dr. Sheriff refused to provide without a warrant. During the course of the visit, Frieborn also requested these records from two of Dr. Sheriff's veterinary technicians—both of whom similarly refused. The veterinary technicians did, however, provide signed declarations detailing the technicians' suspicions that Plaintiffs' dogs were being neglected.[5] Frieborn allegedly pressured the veterinary technicians to sign the declarations by use of threat. Conversely, Dr. Sheriff provided a declaration stating Plaintiffs' dogs were in good health.

Thereafter, Frieborn submitted the veterinary technicians' affidavits to support the issuance of a warrant to search Plaintiffs' Property but she did not submit Dr. Sheriff's declaration. The search warrant provided seven categories of items which could be seized during the search, one of which included seizing any "animal . . . found in a

///

---

[5] City and Non-Municipal Defendants each request that the Court take judicial notice of five documents, which include: (1) the Affidavit of Search Warrant (Ex. A to City RJN; Ex. A to Non-Mun. RJN); (2) the Search Warrant (Ex. B to City RJN; Ex. B to Non-Mun. RJN); (3) the Order for Release (Ex. C to City RJN; Ex. C to Non-Mun. RJN); (4) the Order After Hearing (Ex. D to City RJN; Ex. D to Non-Mun. RJN); and (5) Notice of Decline to Prosecution (Ex. E to City RJN; Ex. E to Non-Mun. RJN). See City RJN, ECF No. 106-2; Non-Mun. RJN, ECF No. 108-2. Non-Municipal Defendants also ask that the Court take judicial notice of the letter to Judge Pineschi. Ex. F, Non-Mun. RJN, ECF No. 108-2. The Court may take judicial notice of documents in the public record if the facts are not "subject to reasonable dispute." Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001), overruled on other grounds, Galbraith v. Cty. of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002); see also Fed. R. Evid. 201(b). City and Non-Municipal Defendants RJNs are GRANTED as to Exhibits A, B, C, and D. However, because the Court did not need to consider the Notice of Decline or the letter to Judge Pineschi, the requests for judicial notice of these documents are DENIED.

neglected and/or abused condition and all animals kept in such a way to be further subjected to neglect and/or abuse."[6]

After receipt of the warrant, Frieborn communicated with the Auburn Police Department and various Friends of the Animal Shelter to conduct a search, which occurred on December 9, 2016. During the execution of the warrant, Plaintiffs claim that they were told to remain in sight of the officers and were kept on the Property for two and a half hours. However, Plaintiffs were permitted to move around the house and leave the Property to attend their sons' graduations. During the course of the 12-hour search, 57 Havanese dogs, various documents, and personal items belonging to Plaintiffs were seized.

A hearing was subsequently held concerning the seizure of Plaintiffs' dogs. This hearing outlined that, as a condition of returning the seized dogs, Plaintiffs were required to pay the veterinary and boarding costs of the animals. Once the state court's fee deadline had passed with no payment, the dogs were released to HSSF's care. Thereafter, Plaintiffs filed the present action.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

---

[6] Other categories included animal records, electronic communication devices and the content stored on those devices, and any items tending to establish ownership. See Ex. B, City RJN, ECF No. 106-2, at 2; Ex. B, Non-Mun. RJN, ECF No. 108-2, at 2.

4

detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors

5

merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

As an initial matter, the Court notes Plaintiffs' SAC suffers the same deficiencies as the FAC in terms of clarity and organization (e.g., paragraphs are misnumbered). It is unclear which causes of action apply to which Defendants and which Plaintiffs are bringing each cause of action.[7] Furthermore, Plaintiffs' Opposition erroneously cites to the FAC and contains numerous references to "SACts" and "SACtual," which indicates that Plaintiffs used the "Find and Replace" function to change "FAC" to "SAC." The Court will take into account these deficiencies in deciding whether leave to amend is warranted.

In any event, the SAC sets forth eleven causes of action ("COA") arising under both federal and state law: (1) violation of the Due Process Clause of the Fourteenth Amendment; (2) violation of the Fourth Amendment for unreasonable search and seizure; (3) violation of Veterinarian-Patient-Client Confidentiality pursuant to California Business and Professions Code § 4587; (4) Monell Claims; (5) Unreasonable Search and Seizure under Article 1, Section 13 of the California Constitution; (6) False

---

[7] For example, under the caption to the First Cause of Action, Plaintiffs list "Officer Debbie [sic] Nelson, Auburn Police Department, Officer Phillip Isetta, Officer Angela McCollouch [sic], Seargent [sic] Tucker Huey; [HSSF]." SAC, at 49. The subsequent paragraphs then refer to "Frieborn, Ransom, Jasper, Doe 1–125, and Fritz." Id. at 49–54. Plaintiffs were previously advised to plead with clarity on the pertinent Defendants for each cause of action but failed to do so.

Imprisonment; (7) Intentional Infliction of Emotional Distress; (8) Conversion; (9) Trespass; (10) Negligence; and (11) Interference with Contract. The Court first addresses Plaintiffs' federal COAs, then turns to the state law COAs.

### A. Federal Claims

#### 1. First COA (Fourteenth Amendment)

Plaintiffs assert a due process claim under the Fourteenth Amendment against various City Defendants and Non-Municipal Defendants.[8] A § 1983 claim based upon procedural due process requires both (1) a deprivation of a liberty or property interest protected by the Constitution, and (2) a denial of adequate procedural protections. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005); see also Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998). If a liberty or property interest exists, the government must provide the deprived individual due process in the form of notice and an opportunity to respond. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).

Plaintiffs contend that they were entitled to a post-seizure hearing to determine the validity of the seizure.[9] See Cal. Penal Code § 597.1(f).

> "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984); . . . Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir. 1994). California law provides an adequate post-deprivation remedy in the form of tort claims against public officials. See Cal. Gov't Code §§ 810–895; Barnett, 31 F.3d at 816–17 (holding that "California Law provides an adequate post-deprivation remedy for any property deprivations").

Preven v. Cty. of Los Angeles, No. CV 11–2340–R (RNB), 2011 WL 2882399, at *21 (C.D. Cal. June 17, 2011). Furthermore, Plaintiffs were provided a post-seizure hearing

---

[8] The Court notes that the facts alleged under the heading for the First COA primarily discuss the conduct related to the search and seizure of Plaintiffs' dogs. Those arguments will be addressed in the subsequent section. See infra Part A.2.

[9] To the extent Plaintiffs allege they were entitled to a pre-seizure hearing, the Court already concluded that a warrant provided the basis for the seizure of Plaintiffs' dogs and thus they were not entitled to a pre-seizure hearing. See Mem. and Order, ECF No. 99, at 6–7; Cal. Penal Code § 597.1(g).

which outlined their options to regain possession of their dogs, including paying boarding fees and veterinary costs. See Ex. D, City RJN; Ex. D, Non-Mun. RJN. Because Plaintiffs failed to pay the required fees and costs, their dogs were not returned to them. Therefore, Plaintiffs' First COA pursuant to the Due Process Clause of the Fourteenth Amendment is DISMISSED without leave to amend.

### 2. Second COA (Fourth Amendment)

Although it is difficult to decipher which Defendants Plaintiffs intended to target via this COA, Plaintiffs assert two primary arguments in support of their Fourth Amendment claim. First, they allege the warrant to seize the dogs and other property was acquired under false pretenses and that Frieborn knowingly falsified the affidavits and other information in support of the warrant application. SAC, at 50 ¶ 159. Second, Plaintiffs argue that even if a valid warrant existed, Defendants exceeded its scope.[10] Id. at 51 ¶ 162.

To establish a viable Fourth Amendment claim, a plaintiff must show not only that there was a search and seizure as contemplated by the Fourth Amendment, but also that said search and seizure was unreasonable and conducted without consent. Rakas v. Illinois, 439 U.S. 128, 143 (1978); United States v. Rubio, 727 F.2d 786, 796–97 (9th Cir. 1983). Governmental conduct can constitute a search for Fourth Amendment purposes in two ways. First, a search can occur when "the person invoking [Fourth Amendment] protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." Smith v. Maryland, 442 U.S. 735, 740 (1979). Under this test, the plaintiff bears the burden of showing both a subjective and objectively reasonable expectation of privacy. See United States v.

---

[10] Plaintiffs argue that both the 12-hour duration of the search and the two-and-a-half-hour detention of Plaintiffs were unreasonable. SAC, at 58 ¶¶ 174, 182. First, the search warrant authorized the search of Plaintiffs' entire Property, which consisted of 35 acres and multiple structures; Plaintiffs have not demonstrated why 12 hours was unreasonable to search such a large area. Second, "[a] detention for the duration of a search is generally reasonable when a warrant exists to search the residence and an occupant is inside the residence when the search begins." Blight v. City of Manteca, 944 F.3d 1061, 1068 (9th Cir. 2019). Plaintiffs failed to show how detention was unreasonable in light of the facts that Plaintiffs were permitted to move around the house, do chores, and leave to attend their sons' graduations. See SAC, at 24–25 ¶ 96.

8

Shryock, 342 F.3d 948, 978 (9th Cir. 2003); Rawlings v. Kentucky, 448 U.S. 98, 104 (1980). Second, a Fourth Amendment search can occur where the government unlawfully occupies private property for the purpose of obtaining information without consent. United States v. Jones, 565 U.S. 400, 404–05 (2012). A "seizure" occurs when there is some "meaningful interference with an individual's possessory interests in . . . property." United States v. Jacobsen, 466 U.S. 109, 113 (1984).

### a.    Non-Municipal Defendants[11]

Plaintiffs first allege that the search warrant was obtained through judicial deception, specifically that Frieborn intentionally excluded from her affidavit Dr. Sheriff's statement that the dogs he examined at the clinic were neither abused nor neglected. SAC, at 14 ¶ 70. To state a claim for judicial deception, "a § 1983 plaintiff must show that the investigator 'made deliberately false statements or recklessly disregarded the truth in the affidavit' and that the falsifications were 'material' to the finding of probable cause." Galbraith v. Cty. of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002) (quoting Hervey v. Estes, 65 F.3d 784, 790 (9th Cir. 1995)). Plaintiffs argue that "if Judge Pineschi had received Dr. Sheriff's statement he would have given it more weight than the declarations from [the veterinary technicians]." Pls.' Opp., ECF No. 118, at 10. Aside from this speculative assumption, Plaintiffs fail to demonstrate that this omission was material to the finding of probable cause.[12] In light of the other information presented, it is unlikely that Dr. Sheriff's statement would have prevented the issuance of

---

[11] Non-Municipal Defendants Frieborn, Ransom, and HSSF concede at this stage that they are "state actors" under § 1983. Non-Municipal Mot., ECF No. 108-1, at 8 n.10. At issue is whether the remaining Non-Municipal Defendants Jasper, Reeves, Newman, Couzens, Crosson, Fritz, Laursen, Friends of the Animal Shelter, and Friends of Auburn/Tahoe Vista Placer County Animal Shelter (collectively, "Non-Municipal Private Defendants") likewise qualify. Plaintiffs again fail to describe how the Non-Municipal Private Defendants acted as state actors, specifically what actions these Defendants took during the search and seizure of Plaintiffs' Property. Such a determination is a highly factual question and without sufficient facts, the Court cannot determine the role played by the Non-Municipal Private Defendants for purposes of the Fourth Amendment analysis.

[12] In addition to the veterinary technicians' declarations, the affidavit submitted by Frieborn included the circumstances surrounding Nelson's visit to Plaintiffs' Property, the lack of a kennel license for Plaintiffs' dog-breeding business, Frieborn's years of training and experience as a humane officer, and a witness report. Ex. A, City RJN; Ex. A, Non-Municipal RJN.

the warrant.  See Olvera v. Cty. of Sacramento, 932 F. Supp. 2d 1123, 1154 (E.D. Cal. 2013) ("[T]he Ninth Circuit has repeatedly emphasized that the Fourth Amendment does not require inclusion of all exculpatory evidence, . . . and has upheld a warrant in the face of omitted evidence that contradicted statements in the warrant application.") (internal citation omitted).[13]

Plaintiffs next allege that even if the search warrant was valid, Non-Municipal Defendants were "required by law to cease the search and stop any seizure" once they found no animals were abused or neglected.  SAC, at 49 ¶ 158.  However, as this Court found, such a contention is contrary to the express language of the warrant.  See Mem. and Order, ECF No. 99, at 9 n.6.  Additionally, Plaintiffs claim that personal belongings not specified in the search warrant were illegally seized and retained, such as jewelry, family heirlooms, and cash.  SAC, at 26 ¶ 99.  While these items were not listed in the search warrant, Plaintiffs still fail to specify which Defendants took these items or where these items were located which would allow the Court to determine whether Non-Municipal Defendants reasonably determined that these items fell within the scope of the warrant.  See Pac. Marine Ctr., Inc. v. Silva, 809 F. Supp. 2d 1266, 1280 (E.D. Cal. 2011).  Thus, the Second COA is DISMISSED without leave to amend against all Non-Municipal Defendants.

### b.    City Defendants

According to Plaintiffs, City Defendants also participated in the unlawful search and seizure.  SAC, at 55 ¶ 167.  Regarding the search warrant, Plaintiffs allege that City Defendants "agreed that Frieborn would obtain a search warrant by deceiving the magistrate with false and misleading information or information they obtained unlawfully by threat or coercion leaving out exculpatory testimony or other unlawful means."

///

///

---

[13] To the extent that Plaintiffs argue the declarations from the veterinary technicians were obtained by use of threats, this argument also fails because Plaintiffs fail to specify which portions of the declarations were false.

Id. at 52 ¶ 161.  However, this statement is conclusory and still fails to show that City Defendants participated in any alleged deception in obtaining the warrant.[14]

Similar to Non-Municipal Defendants above, Plaintiffs' allegations that City Defendants illegally seized and retained items not listed in the search warrant are insufficient because the SAC does not specify which Defendants took the items.  In fact, most of the allegations pertain to Non-Municipal Defendants and the SAC even provides that the dogs and other items were seized by Non-Municipal Defendants.  Accordingly, the Second COA is also DISMISSED without leave to amend against City Defendants.

### 3.   Fourth COA (Monell Claims)

Plaintiffs assert their Monell claims against the City of Auburn and the Auburn Police Department for the actions of the City's police officers during the search and seizure.  SAC, at 64 ¶ 199.  Municipalities and local officials cannot be vicariously liable for the conduct of their employees under § 1983, but rather are only "responsible for their own illegal acts."  Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)).  In other words, a municipality may only be liable where it individually caused a constitutional violation via "execution of a government's policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Ulrich v. City & Cty. of S.F., 308 F.3d 968, 984 (9th Cir. 2002).  The Ninth Circuit has explained how this showing can be made:

> [T]here are three ways to show a policy or custom of a municipality:  (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

///

---

[14] Plaintiffs' Opposition appears to concede that City Defendants did not play a role in the alleged deception and instead focuses on Non-Municipal Defendants' role in obtaining the search warrant.  See Pls.' Opp., ECF No. 118, at 10.

11

Rosenbaum v. City & Cty. of S.F., 484 F.3d 1142, 1155 (9th Cir. 2007) (citations and internal quotation marks omitted); see City of Canton v. Harris, 489 U.S. 378, 390–91 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Here, the SAC fails to allege facts showing any official policy, custom, or other usage of municipality caused Plaintiffs' harm. Plaintiffs claim that the City of Auburn and Auburn Police Department failed to train their officers in executing search warrants and failed to supervise those Defendants participating in the search, but Plaintiffs again do not identify any City policy or custom or address how this training was deficient.[15] Therefore, the Fourth COA is DISMISSED without leave to amend.

### B. State Claims

#### 1. Third COA (Violation of Patient/Veterinarian Confidentiality)[16]

Plaintiffs allege Dr. Sheriff's veterinary technicians and other unidentified employees disclosed confidential information to Lechner and therefore Dr. Sheriff is vicariously liable for their disclosures. SAC, at 63 ¶ 197. Business and Professions Code § 4587 provides that licensed veterinarians "shall not disclose any information concerning any animal receiving veterinary services, the client responsible for the animal receiving veterinary services, or the veterinary care provided to an animal." Cal. Bus. & Prof. Code § 4587(a). Here, Plaintiffs fail to identify what confidential information was revealed to Lechner, who disclosed such information, and when such information was disclosed. Furthermore, Lechner observed the dogs himself at the clinic, and such public observations do not constitute disclosures under Cal. Bus. & Prof. Code § 4587.

---

[15] Plaintiffs concede in their Opposition that the "SAC does not expressly state that the [Auburn Police Department] has engaged in a pattern and practice of illegally seizing animals," but that one can be inferred from HSSF's pattern and practice of illegally seizing animals. Pls.' Opp., ECF No. 118, at 27. However, such an inference is insufficient to allege a Monell claim. Furthermore, Plaintiffs were aware that they needed to allege a policy, practice, or custom for their Monell claim to survive and the fact that they have not at this stage indicates that leave to amend is futile. See Mem. and Order, ECF No. 99, at 10–11.

[16] This is the only COA asserted against Dr. Sheriff.

See SAC, at 7 ¶ 43 (stating Nelson was investigating a complaint made by an individual at the clinic who saw 20 to 30 dogs coming in for bark-softening surgeries and that the individual "did not like what they saw").  As such, the Third COA is DISMISSED without leave to amend.[17]

### 2. Remaining State COAs

Plaintiffs' federal claims presently dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state law COAs.  The Court need not address the merits of City Defendants and Non-Municipal Defendants' Motions to Dismiss with respect to the remaining state law COAs, as those issues are now moot.

### CONCLUSION

For the reasons stated above, the City Defendants' Motion to Dismiss, ECF No. 106, Dr. Sheriff's Motion to Dismiss, ECF No. 107, and the Non-Municipal Defendants' Motion to Dismiss, ECF No. 108, are each GRANTED without leave to amend.  The Clerk of the Court is directed to enter judgment in favor of Defendants and to close the case.

IT IS SO ORDERED.

Dated:  April 28, 2020

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[17] The Court notes that Plaintiffs' Opposition to Dr. Sheriff's 15-page Motion is only one paragraph. Compare Mem. ISO Sheriff Mot., ECF 107-1, with Pls.' Opp., ECF No. 118, at 27–28.

13