UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JAMES DAHLIN and KIMBERLY DAHLIN,

Plaintiffs,

v.

ROSEMARY FRIEBORN, CURT RANSOM, DEBBIE NELSON, PHILLIP ISETTA, ANGELA MCCULLOUGH, TUCKER HUEY, and THOMAS SHERIFF,

Defendants.

No.  2:17-cv-02585-MCE-AC

**MEMORANDUM AND ORDER**

Through the present action, Plaintiffs James and Kimberly Dahlin ("Plaintiffs") assert eight federal and state causes of action against various municipal and non-municipal Defendants stemming from the seizure of various items and 57 dogs from Plaintiffs' property, where they own and operate a dog breeding business.  Third Am. Compl., ECF No. 149 ("TAC").[1]  Presently before the Court are two individually briefed

---

[1] The TAC does not include the following parties who were listed in former complaints:  (1) Plaintiff Toby Tippets, (2) Plaintiff Martina Tippets, (3) Defendant Marilyn Jasper, (4) Defendant Cassie Reeves, (5) Defendant Katie Newman, (6) Defendant Sherry Couzens, (7) Defendant Humane Society of the Sierra Foothills, (8) Defendant Friends of Placer County Animal Shelter, (9) Defendant Friends of the Auburn/Tahoe Vista Placer County Animal Shelter, (10) Defendant Friends of the Auburn/Tahoe Vista Placer County Animal Shelter, Inc., (11) Defendant City of Auburn, (12) Defendant Auburn Police Department, (13) Defendant Michael Crosson, (14) Defendant Edward J. Fritz, and (15) Defendant Shana Laursen.  See TAC ¶¶ 1–9.

1

1   Motions to Dismiss Plaintiffs' TAC filed by the following group of Defendants:  (1) Debbie

2   Nelson ("Nelson"), Phillip Isetta ("Isetta"), Angela McCollough ("McCollough"), and

3   Tucker Huey ("Huey") (collectively, "City Defendants"), ECF No. 151; and (2) Rosemary

4   Frieborn ("Frieborn") and Curt Ransom ("Ransom") (collectively, "Non-Municipal

5   Defendants"), ECF No. 152.[2]  For the reasons that follow, both Motions are GRANTED

6   in part and DENIED in part.[3]

7

8                                    **BACKGROUND**[4]

9

10       Plaintiffs operate a Havanese dog breeding business.  On October 28, 2016,

11   Community Services Officer Isetta of the Auburn Police Department ("APD") contacted

12   Plaintiff Kimberly Dahlin regarding a complaint about her dogs barking.  In response,

13   Plaintiffs scheduled bark softening surgeries for some of their dogs.

14       Sometime prior to November 1, 2016, United States Postal Service driver Scott

15   Lechner ("Lechner") allegedly obtained confidential information regarding Plaintiffs and

16   their dogs from North Fork Veterinary Clinic ("NFVC") employees Ashley Dorer ("Dorer"),

17   Shannon Widmann ("Widmann"), and Margaret Waltz, such as Plaintiffs' names,

18   address, telephone number, and information relating to their dogs' surgeries.  These

19   employees gave Lechner information which led him to believe the dogs were not

20   receiving proper care, were owned by private breeders, could not stand on their own,

21   and were from a "puppy mill."  Lechner contacted APD Community Services Officer

22   Nelson and reported that Plaintiffs were selling and debarking their dogs, among other

23   alleged abuses.

24       [2] Plaintiff also brings this lawsuit against Dr. Thomas Sheriff, DVM ("Dr. Sheriff"), who elected to
    file an Answer to the TAC.  ECF No. 150.  However, Dr. Sheriff also filed statements of non-opposition to
25   both Motions to Dismiss.  ECF Nos. 154, 155 (raising evidentiary objections to declarations referenced but
    otherwise no opposition to the substance of both Motions).
26

27       [3] Because oral argument would not have been of material assistance, the Court ordered these
    matters submitted on the briefs.  E.D. Local Rule 230(g).

28       [4] The following recitation of facts is taken, sometimes verbatim, from the TAC.

On November 15, 2016, Nelson confronted Plaintiffs at their home and informed them that someone who had been to NFVC learned that 20 to 30 of Plaintiffs' dogs had been admitted to the clinic for bark softening surgeries and the complainant "did not like what they saw." Upon inspecting the premises, Nelson allegedly did not observe any abuse or neglect. Nelson reported her findings to Lechner, which disappointed him. Lechner complained to his supervisor, who then complained to Humane Society Officer Frieborn of the Humane Society of the Sierra Foothills, Inc. ("HSSF").

On November 23, 2016, Frieborn requested that Dr. Sheriff of NFVC release the subject dogs' medical records, which he refused. Dr. Sheriff told Frieborn that he never suspected animal cruelty, that he did not see any abuse or neglect, that the dogs all looked well taken care of and seemed well-fed, and that none of the dogs had bad odor. Nevertheless, a couple days later, on November 25, 2016, Dr. Sheriff's employees Dorer and Widmann, while allegedly acting within the scope of their duties as NFVC employees, executed declarations for Frieborn indicating that the dogs were not receiving proper care. Dorer declared that the dogs were poorly socialized, scared, not professionally trimmed, always had bad teeth, had ear infections, and would not walk on a leash. According to Plaintiffs, Frieborn intimidated Dorer and Widmann into executing their declarations by threatening to cause them legal trouble if they did not sign them.

On December 5, 2016, Frieborn presented a search warrant affidavit to a Placer County Superior Court judge that included the Dorer and Widmann declarations but not Dr. Sheriff's statements. The state court judge issued a search warrant for Plaintiffs' property, which allowed the seizure of, among other things, "all born and unborn animals, living above or below ground found in a neglected and/or abused condition . . ."

A few days later, on December 9, 2016, HSSF Officers Frieborn and Ransom and APD Officers Nelson, McCullough, Isetta, and Huey, along with others, as part of a joint operation of the HSSF and APD, executed the search warrant. Plaintiffs allege that there were no dogs on the property in an abused or neglected condition or kept in such a way as to be subjected to future abuse or neglect. Despite this, the search group seized

57 of Plaintiffs' dogs and other items not enumerated in the warrant, including: (1) $10,000 in cash; (2) jewelry; (3) family heirlooms; (4) religious materials; (5) family medical records; (6) x-ray charts; (7) books; (8) magazines; (9) cancer research; (10) American Kennel Club records; (11) real estate records for other properties; and (12) contact information for church missionaries.  On January 20, 2017, Dr. Edward Fritz examined the 57 dogs and found them to be "in good flesh" and only provided nail trimming, parasite testing, and vaccinations, which, according to Plaintiffs, shows that the dogs were already in good health.

The Placer County District Attorney declined to prosecute Plaintiffs for animal cruelty on January 24, 2017, explaining, in part, that the warrant affidavit presented to the state court judge "purposely omitted the opinion of [Dr. Sheriff] who had recently cared for the dogs in question[,]" and that "had the court been provided with that opinion, the court would not have issued the warrant."  Overall, the District Attorney concluded that they did not believe they could prove animal cruelty beyond a reasonable doubt based on photographs taken during the search showing that the dogs were provided with food, water, shelter, medicine, and space heaters, as well as Dr. Fritz's post-search examination of the dogs.

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[5] all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

---

[5] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief."  Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing Wright & Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  Id.  However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

be considered when deciding whether to grant leave to amend).  Not all of these factors

merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

"the complaint could not be saved by any amendment."  Intri-Plex Techs., Inc. v. Crest

Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d

1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160

(9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . .

constitutes an exercise in futility . . . .")).

**ANALYSIS**

The Court previously dismissed Plaintiffs' Second Amended Complaint without

leave to amend.  See ECF No. 123.  Plaintiffs subsequently appealed the Court's ruling

to the United States Court of Appeals for the Ninth Circuit.  ECF No. 127.  On May 28,

2021, the Ninth Circuit issued an order affirming in part and reversing in part this Court's

order.  ECF No. 131.  The Ninth Circuit determined that this Court erred in dismissing

Plaintiffs' judicial deception claim against Frieborn and Fourth Amendment claim as to

Frieborn, Ransom, Nelson, Isetta, McCollough, and Huey "based on the seizure of

property outside the scope of the warrant."  See id. at 2–5.  Otherwise, this Court's order

was affirmed and remanded back for further proceedings.

On March 23, 2022, Plaintiffs filed the operative TAC, asserting the following

causes of action:  (1) violation of Plaintiffs' Fourth Amendment rights by judicial

deception against Frieborn; (2) illegal seizure of items not covered by the warrant

against City and Non-Municipal Defendants; (3) divulgement of confidential information

against Dr. Sheriff; (4) violation of the Bane Act, California Civil Code § 52.1, against City

and Non-Municipal Defendants; (5) conversion against City and Non-Municipal

Defendants; (6) trespass against City and Non-Municipal Defendants; (7) intentional

6

1  infliction of emotional distress ("IIED") against City and Non-Municipal Defendants; and

2  (8) general negligence against all Defendants.  In their present Motions to Dismiss, City

3  and Non-Municipal Defendants seek dismissal of Plaintiffs' state law claims only.  The

4  Court will first address City Defendants' argument that they are entitled to statutory

5  immunity, then examine each of Plaintiffs' state law claims as to both City and Non-

6  Municipal Defendants.

7       **A.    Immunity Under California Government Code § 821.6 as to City Defendants**

8
9        City Defendants first argue that Plaintiffs' state law claims fail "as the officers are

entitled to immunity for investigating a crime pursuant to a facially valid warrant."  City

10  Defs.' Mem. ISO Mot. Dismiss, ECF No. 151-1, at 6.  They rely on California

11  Government Code § 821.6, which provides that "[a] public employee is not liable for

12  injury caused by his instituting or prosecuting any judicial or administrative proceeding

13  within the scope of his employment, even if he acts maliciously and without probable

14  cause."  Plaintiffs contend that § 821.6 only applies to claims of malicious prosecution,

15  <u>see</u> Pls.' Opp'n City Defs.' Mot. Dismiss, ECF No. 157, at 5–6, whereas City Defendants

16  assert that § 821.6 applies more broadly to officers' investigative conduct.  <u>See</u> City

17  Defs.' Reply ISO Mot. Dismiss, ECF No. 159, at 2.  The Court agrees with Plaintiffs.

18        The Ninth Circuit has addressed the scope of § 821.6 as follows:

19
20       "When interpreting state law, a federal court is bound by the decision of the highest state court."  <u>Hewitt v. Joyner</u>, 940 F.2d 1561, 1565 (9th Cir. 1991) (citation omitted).  In <u>Sullivan v. County of Los Angeles</u>, 12 Cal. 3d 710, 117 Cal. Rptr. 241, 527 P.2d 865, 871 (1974), the California Supreme Court interpreted section 821.6 as "confining its reach to malicious prosecution actions."  It is true that, since <u>Sullivan</u>, California Courts of Appeal have interpreted section 821.6 more expansively.  <u>See</u>, <u>e.g.</u>, <u>Kayfetz v. State</u>, 156 Cal. App. 3d 491, 497, 203 Cal. Rptr. 33 (1984) ("section 821.6 is not limited to suits for damages for malicious prosecution, although that is a principal use of the statute"); <u>Amylou R. v. C[n]ty. of Riverside</u>, 28 Cal. App. 4th 1205, 1211, 34 Cal. Rptr. 2d 319 (1994) (explaining that "the section clearly extends to proceedings which were not initiated out of a malicious intent, and thus would not constitute malicious prosecution").  Nonetheless, several district courts within this circuit have read <u>Sullivan</u> to mean that section 821.6 applies

21
22
23
24
25
26
27
28

only to malicious prosecution claims, in spite of the California Courts of Appeal decisions.  See, e.g., Dinius v. Perdock, 2012 WL 1925666, at *8–*9 (N.D. Cal. May 24, 2012) (agreeing "with the California Supreme Court's decision in Sullivan and find[ing] that Section 821.6 only applies to claims for malicious prosecution" after noting that Sullivan's holding "has been distinguished by numerous California Court of Appeal decisions"); Williams v. City of Merced, 2013 WL 498854, at *17 (E.D. Cal. Feb. 7, 2013) (same).

The court "must determine what meaning the state's highest court would give the statute in question." Goldman v. Standard Ins. Co., 341 F.3d 1023, 1026 (9th Cir. 2003). We think the California Supreme Court would adhere to Sullivan even though California Courts of Appeal have strayed from it. Sullivan explained that section 821.6 expressly continued the existing immunity of public employees against malicious prosecution claims and noted that "no statute impose[d] liability on public entities for malicious prosecution." Sullivan, 117 Cal. Rptr. 241, 527 P.2d at 871. Further, the cases the legislative history cited focused on malicious prosecution claims. Id.

Because the California Supreme Court has already spoken on this issue, we follow Sullivan and we reverse and hold that the district court erred in dismissing the state law claims against County Defendants because the claims against them are not malicious prosecution claims.

Garmon v. Cnty. of L.A., 828 F.3d 837, 847 (9th Cir. 2016) (alteration in original).  This Court is bound by the Ninth Circuit's decision in Garmon.  See, e.g., Figueroa v. Kern Cnty., No. 1:19-cv-00558-DAD-JLT, 2021 WL 826216, at *8–9 (E.D. Cal. Mar. 4, 2021); Valenzuela v. San Diego Police Dep't, No. 19-cv-00002-BAS-BLM, 2020 WL 804923, at *4 (S.D. Cal. Feb. 18, 2020).  Because Plaintiffs do not bring a claim for malicious prosecution, City Defendants are not entitled to immunity under § 821.6 on any of the state law claims.

### B.    Plaintiffs' State Law Claims

#### 1.    Fourth Cause of Action for Violation of the Bane Act, California Civil Code § 52.1, as to City and Non-Municipal Defendants

"The elements of a cause of action under the Bane Act are:  (1) defendants interfered by threat, intimidation, or coercion, or attempted to interfere by threat, intimidation, or coercion; (2) with the exercise or enjoyment by any individual of rights

8

1   secured by federal or state law."  Ordonez v. Stanley, 495 F. Supp. 3d 855, 865–66

2   (C.D. Cal. 2020) (citing King v. State of Cal., 242 Cal. App. 4th 265, 294 (2015)).

3   "Plaintiff must allege defendants had a specific intent to violate the rights of

4   plaintiff."  Id. at 866 (citing Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1043

5   (9th Cir. 2018)).  "[A]n unlawful search or seizure can form the basis of a cause of action

6   under § 52.1."  Martin v. Cnty. of San Diego, No. 03-CV-1788-IEG (WMC), 2004 WL

7   7334370, at *4 (S.D. Cal. May 12, 2004).  Here, Plaintiffs have stated viable Fourth

8   Amendment claims based on the allegations that (1) Frieborn obtained the search

9   warrant through judicial deception, and (2) City and Non-Municipal Defendants seized

10  items not covered by the search warrant. TAC ¶¶ 27–28; see also ECF No. 131

11  (reversing this Court's dismissal of those claims).  Such allegations, if true, invoke a level

12  of "coercion" prohibited by the Bane Act.  Therefore, City and Non-Municipal Defendants'

13  Motions to Dismiss this claim are DENIED.[6]

14  **2.    Fifth Cause of Action for Conversion as to Non-Municipal Defendants[7]**

15  "Conversion is the wrongful exercise of dominion over the property of another."

16  Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1066 (1998).  "The elements of a

17  conversion claim are:  (1) the plaintiff's ownership or right to possession of the property;

18  (2) the defendant's conversion by a wrongful act or disposition of property rights; and

19  (3) damages."  Id.  Non-Municipal Defendants contend that Plaintiffs' property rights

20  were extinguished when they failed to timely pay seizure and care costs for the dogs or

21  otherwise pursue any remedy to retrieve their seized property.  Non-Municipal Defs.'

22  Mem. ISO Mot. Dismiss, ECF No. 152-1, at 9.  However, Plaintiffs' allegations that Non-

23  

24      [6] City Defendants contend that Plaintiffs did not respond to their argument that they fail to state a
        Bane Act claim against them.  City Defs.' Reply ISO Mot. Dismiss, ECF No. 159, at 2.  In opposition to City

25      Defendants' Motion, Plaintiffs only discuss their Bane Act claim in relation to City Defendants' immunity
        arguments.  See Pls.' Opp'n City Defs.' Mot. Dismiss, ECF No. 157, at 6–7.  However, in so doing,

26      Plaintiffs assert that "officers could be sued under the Bane Act for violating a person's Fourth Amendment
        rights."  Id. at 7.  Because the Court finds that to be true regarding Non-Municipal Defendants, the Court

27      declines to dismiss the Bane Act claim against City Defendants for the same reasons.

        [7] City Defendants do not move to dismiss the conversion cause of action for failure to state a

28      claim.

Municipal Defendants seized items beyond the scope of the search warrant, including healthy dogs and money, are sufficient to sustain their conversion claim.  See TAC ¶¶ 31–32.  Therefore, Non-Municipal Defendants' Motion to Dismiss this cause of action is DENIED.

### 3.    Sixth Cause of Action for Trespass as to City and Non-Municipal Defendants

Trespass is the "unlawful interference" with the possession of property.  5 Witkin, Summary of California Law § 803 (11th ed. 2022).  "The elements of trespass are:  (1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) lack of permission for the entry or acts in excess of permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm."  Ralphs Grocery Co. v. Victory Consultants, Inc., 17 Cal. App. 5th 245, 262 (2017), as modified (Nov. 6, 2017).   Both City and Non-Municipal Defendants move to dismiss this claim on grounds that Defendants entered Plaintiffs' property pursuant to a facially valid search warrant.  See City Defs.' Mem. ISO Mot. Dismiss, ECF No. 151-1, at 8; Non-Municipal Defs.' Mem. ISO Mot. Dismiss, ECF No. 152-1, at 9–10.

A police officer may enter a plaintiff's home without committing trespass while executing a valid search warrant.  Brunette v. Humane Soc'y of Ventura Cnty., 294 F.3d 1205, 1210 (9th Cir. 2002).  Additionally, Humane Society officers engage in quasi-public functions are "invested with authority to investigate reports of animal cruelty, impound animals, place liens on property, and bring criminal charges against citizens." Cal. Corp. Code § 14502; Brunette, 294 F.3d at 1208.  Because City Defendants and Ransom acted under a facially valid warrant to search and seize Plaintiffs' property, no trespass occurred.[8]  However, because Plaintiffs have adequately alleged that Frieborn obtained the search warrant through judicial deception, there is a question as to whether

---

[8] For this same reason, the Court also finds that City Defendants are entitled to immunity under California Government Code § 821.8, which provides that "[a] public employee is not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law." See City Defs.' Mem. ISO Mot. Dismiss, ECF No. 151-1, at 6–7.

1  she was lawfully on Plaintiffs' property.  Accordingly, the trespass claim is DISMISSED

2  without leave to amend as to City Defendants and Ransom, but Non-Municipal

3  Defendants' Motion to Dismiss as to Frieborn is DENIED.

### 4.   Seventh Cause of Action for IIED as to City and Non-Municipal Defendants

To state a claim for IIED, Plaintiffs must show (1) Defendants' conduct was

extreme and outrageous with the intention of causing, or reckless disregard of the

probability of causing, emotional distress; (2) Plaintiffs suffered severe or extreme

emotional distress; and (3) Defendants' outrageous conduct was the actual and

proximate cause of the emotional distress.  Potter v. Firestone Tire & Rubber Co., 6 Cal.

4th 965, 1001 (1993).  Extreme and outrageous conduct is "so extreme as to exceed all

bounds of that usually tolerated in a civilized community."  Id.  California courts have set

a high bar for emotional distress claims, requiring "emotional distress of such substantial

quality or enduring quality that no reasonable [person] in civilized society should be

expected to endure it."  Kelley v. Conco Cos., 196 Cal. App. 4th 191, 215–16 (2011)

(alteration in original) (citation and internal quotation marks omitted).

The Court need not address the nature of Defendants' conduct because Plaintiffs'

general allegations that "Frieborn's act of obtaining a search warrant through judicial

deception" and Defendants' seizure of Plaintiffs' personal items not covered by the

search warrant "caused them to suffer severe emotional distress" are insufficient to state

a cause of action for IIED.  See TAC ¶¶ 34–36.  Because Plaintiffs have had multiple

opportunities to amend this claim, their IIED cause of action is DISMISSED without leave

to amend.

### 5.   Eighth Cause of Action for General Negligence as to Non-Municipal Defendants[9]

To establish a claim of negligence, Plaintiffs must show (1) the existence of a duty

to exercise due care, (2) breach of that duty, (3) causation, and (4) damages.  See

---

[9] City Defendants do not move to dismiss Plaintiffs' negligence cause of action for failure to state a claim.

1    Merrill v. Navegar, Inc., 26 Cal. 4th 465, 500 (2001).  "Under California law, a well-

2    pleaded constitutional violation serves to establish the breach of a defendant's duty of

3    care for negligence purposes."  Green v. Bd. of Regents of the Univ. of Cal., No. 2:21-cv-

4    04077-RGK-AFM, 2021 WL 6751903, at *6 (C.D. Cal. Oct. 22, 2021) (citing Young v.

5    Cnty. of L.A., 655 F.3d 1156, 1170 (9th Cir. 2011)).  Because Plaintiffs have adequately

6    alleged Fourth Amendment violations against Non-Municipal Defendants based on

7    judicial deception and seizure of items outside the scope of the warrant, dismissal of

8    Plaintiffs' negligence claim is not warranted.  Therefore, Non-Municipal Defendants'

9    Motion to Dismiss this claim is DENIED.

10

11                                        **CONCLUSION**

12

13            For the foregoing reasons, City Defendants' Motion to Dismiss, ECF No. 151, and

14    Non-Municipal Defendants' Partial Motion to Dismiss, ECF No. 152, are each GRANTED

15    in part and DENIED in part.  Plaintiffs' Sixth Cause of Action is DISMISSED without

16    leave to amend as to City Defendants and Ransom, but shall proceed against Frieborn.

17    Plaintiffs' Seventh Cause of Action is DISMISSED without leave to amend.  Otherwise,

18    Defendants' Motions to Dismiss the remaining causes of action are DENIED.  This case

19    shall proceed on the remaining claims.

20            IT IS SO ORDERED.

21

22    DATED:  October 15, 2022

23

24    _____

25    MORRISON C. ENGLAND, JR.
      SENIOR UNITED STATES DISTRICT JUDGE

26

27

28