1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAMES DAHLIN, et al.,                    No.  2:17-cv-02585-DC-AC

12                 Plaintiffs,

13        v.                                  ORDER GRANTING DEFENDANTS'
                                              MOTION FOR TERMINATING SANCTIONS
14   ROSEMARY FRIEBORN, et al.,               AND DISMISSING THIS ACTION

15                 Defendants.                (Doc. Nos. 241, 254, 259)

16

17

18        This matter is before the court on the motion for terminating sanctions filed by Defendants

19   Rosemary Frieborn and Curt Ransom (Doc. No. 241) and joined by Defendant Thomas Sheriff

20   (Doc. No. 242) and Defendants Tucker Huey, Phillip Isetta, Angela McCollough, and Debbie

21   Nelson (Doc. No. 243). The pending motion was taken under submission to be decided on the

22   papers pursuant to Local Rule 230(g). (Doc. No. 248.) For the reasons explained below, the court

23   will grant Defendants' motion.

24                                **BACKGROUND**

25        On October 1, 2024, the court issued an order resolving "a number of discovery issues and

26   disputes as to Plaintiffs' own neglect in moving this case along." (Doc. No. 209.) That order

27   accurately recounted in detail counsels' conduct in litigating this case since the matter was

28   remanded from the Ninth Circuit in approximately June 2021, and in particular Plaintiffs'

                                        1

counsel's egregious and unprofessional behavior. (*Id.* at 2–12.) Plaintiffs sought reconsideration of that order, which the court denied in an order issued on January 24, 2025. (Doc. No. 240.) The January 24, 2025 order likewise recounted counsels' conduct in this case after the court issued its October 1, 2024 order, and in particular, Plaintiffs' counsel's noncompliance with the court's October 1, 2024 order. (*See id.* at 2–7.) Rather than repeat the background and analysis sections from the October 1, 2024 and January 24, 2025 orders herein, the court incorporates by reference those orders in their entirety.

Importantly, in the January 24, 2025 order, the court addressed Defendants' then-pending motion for terminating sanctions and "recognized that terminating sanctions are warranted under the circumstances." (*Id.* at 14.) Nonetheless, given the severity of terminating sanctions, the court found "it appropriate to provide Plaintiffs with a final opportunity to avoid terminating sanctions by complying with" several directives that the court outlined in detail. (*Id.* at 14–17.) Plaintiffs were "warned that their failure to comply with this order will likely result in the court issuing terminating sanctions upon Defendants' request." (*Id.* at 15.)

On February 7, 2025, Defendants Frieborn and Ransom filed the pending motion for terminating sanctions due to Plaintiffs' failure to comply with the court's January 24, 2025 order. (Doc. No. 241.) On February 20, 2025, Defendant Sheriff joined in that motion, asserting that "the failure of Plaintiffs to participate in discovery exchanges or sit for the retaking of their depositions in a timely manner materially effects Defendant Sheriff's ability to defend himself to the fullest extent of the law" and requesting the court "dismiss the Plaintiffs' claims against all parties, with prejudice for failure to prosecute their case diligently and in accordance with the Federal Rules of Civil Procedure." (Doc. No. 242 at 2.) Defendants Huey, Isetta, McCollough, and Nelson likewise joined in the motion for terminating sanctions, asserting that Plaintiffs' "continual and repeated refusals to comply with repeated discovery requests and orders has been so egregious as to warrant terminating sanctions against Plaintiffs with respect to all claims against all parties" and Plaintiffs' "egregious and continuing discovery failures impacts all parties as the lawsuit cannot progress, and the defense of the matter has needlessly stalled, to the detriment of every party." (Doc. No. 243 at 2.)

On February 21, 2025, Plaintiffs filed an opposition to the pending motion for terminating sanctions. (Doc. No. 244.) On March 3, 2025, Defendants Frieborn and Ransom filed a reply thereto. (Doc. No. 247.)

## LEGAL STANDARD

Courts have the authority to dismiss actions where a plaintiff has failed to comply with court orders. Pursuant to Federal Rule of Civil Procedure 41(b), "[i]f the plaintiff fails to prosecute or to comply with . . . a court order, a defendant may move to dismiss the action . . . ." Fed. R. Civ. P. 41(b). In addition, Rule 37(b)(2) provides that if a plaintiff fails to obey an order to provide discovery, the court may issue an order "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v). The standards governing dismissal for failure to obey a court order are basically the same under either" Rule 41(b) and Rule 37(b).[1] *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987).

District courts weigh the following five factors in determining whether dismissal of a case is an appropriate sanction for a plaintiff's failure to comply with a court order: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992), as amended (May 22, 1992) (quoting *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986)). As to the fifth factor, there are three sub-parts courts consider: (i) whether the court has considered lesser sanctions, (ii) whether it tried them, and (iii) whether it warned the recalcitrant party about the possibility of case-dispositive

---

[1] Because the sanction of dismissal of a plaintiff's action is "very severe," where dismissal is based on Rule 37(b), "only 'willfulness, bad faith, and fault' justify terminating sanctions." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003)). "[D]isobedient conduct not shown to be outside the control of the litigant" is all that is required to demonstrate willfulness, bad faith, or fault." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) (finding "the district court did not abuse its discretion in dismissing [the plaintiff's] suit" where the plaintiff "offer[ed] various explanations for his discovery misconduct, but all are either legally irrelevant or factually implausible, and none persuades that circumstances outside his control caused his transgressions").

sanctions. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).

District courts are not required to "make explicit findings in order to show that it has considered these factors." *Ferdik*, 963 F.2d at 1261; *see Conn. Gen. Life Ins. Co.*, 482 F.3d at 1097 (affirming order of dismissal where the record amply supported terminating sanctions even though "the district court issued a terse order and did not engage in extended discussion").

In addition, "[t]erminating sanctions may be appropriate even if disobedience of the court order is the fault of the party's attorney alone." *Smith v. Cnty. of Sacramento*, No. 2:19-cv-01426-TLN-CKD, 2021 WL 1985450, at *2 (E.D. Cal. May 18, 2021) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962)). "A plaintiff cannot avoid dismissal by arguing that he or she is an innocent party who will be made to suffer for the errors of his or her attorney." *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1523 (9th Cir. 1990) (citations omitted). "The established principle is that the faults and defaults of the attorney may be imputed to, and their consequences visited upon, his or her client." *Id.*

## DISCUSSION

As shown in Defendants' pending motion and as admitted to by Plaintiffs in their opposition, Plaintiffs did not comply with the directives in the court's January 24, 2025 order, despite being warned that such failure would result in terminating sanctions.

Specifically, the court ordered that "within five (5) days[2] from the date of entry" of the January 24, 2025 order—i.e., by January 29, 2025—"Plaintiffs' counsel shall provide defense counsel with all dates that are within thirty (30) days from the date of entry of this order, in which

---

[2] Federal Rule of Civil Procedure 6 governs computing time periods specified in court orders, and clarifies as follows:

> When the period is stated in days or a longer unit of time: (A) exclude the day of the event that triggers the period; (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Fed. R. Civ. P. 6(a)(1).

Plaintiffs' counsel and both Plaintiffs James Dahlin and Kimberly Dahlin are available to sit for further depositions." (Doc. No. 240 at 16.) Plaintiffs admit in their opposition that deposition dates were not provided to defense counsel by the deadline set by the court. (Doc. No. 244 at 5.) Rather, Plaintiffs' counsel provided deposition dates by email to defense counsel on January 31, 2025—two days passed the deadline. (*Id.*; Doc. No. 241-9 at 4.) Moreover, as defense counsel emphasized in their response to that email, Plaintiffs did not provide "all dates" within the thirty days following entry of the court's order as required; they provided a single date for each Plaintiff, neither of which worked with defense counsel's schedules. (Doc. No. 241-9 at 2.) Defense counsel then requested several times that Plaintiffs provide their full availability, as directed by the court, and Plaintiffs did not do so. (Doc. No. 241-1 at 3.) In their opposition to the pending motion, Plaintiffs inaccurately recount this exchange as Plaintiffs having provided "said dates, but the parties could not come to an agreement." (Doc. No. 244 at 5.) Plaintiffs also essentially admit to not carefully reviewing the court's order to ensure timely compliance because they excuse their failure to timely comply by stating they "actually thought the order required that the parties select dates within 7 days . . . ." (*Id.*) Plaintiffs' lack of care in this regard does not excuse their failure to comply with the court's order.

The court's January 24, 2025 order outlined certain other tasks that were required to be completed within seven days of entry of the court's order, though Plaintiffs did not comply with those directives either. Specifically, the court ordered that "within seven (7) days from the date of entry" of the January 24, 2025 order, "the parties shall either confirm that the previously agreed-upon discovery referee is available to preside over the additional depositions of Plaintiffs, or appoint a different mutually agreed upon discovery referee." (Doc. No. 240 at 17.) To that end, the court further ordered that "[i]f no referee can be agreed upon, the parties shall file an application for the court to appoint a discovery referee, and if the court determines the failure to reach an agreement is due to continued dilatory or unreasonable behavior on Plaintiffs' or their counsels' behalf, the court will construe such failure as Plaintiffs non-compliance with this order, which will likely lead to terminating sanctions." (*Id.*) Plaintiffs did not communicate with Defendants regarding a discovery referee until five days after the January 31, 2025 deadline and

only after defense counsel raised the issue in an email. (Doc. No. 241-1 at 7.) Plaintiffs' counsel's response to that email on February 5, 2025 was not only untimely, but it was also substantively deficient because it merely stated, "we intend to go with Judge Brian Van Camp, assuming he is available." (Doc. No. 241-10 at 3.) Thus, Plaintiffs did not confirm the availability of the parties' previously agreed-upon discovery referee nor select a different mutually agreed upon referee as directed. In their opposition to the pending motion, Plaintiffs' counsel excuses this failure by explaining his legal assistant/wife made an "honest mistake" and "inadvertently neglect[ed]" to inform defense counsel of their intentions as to the discovery referee. (Doc. No. 244 at 5.) This is not the first time in this case that Plaintiffs' counsel has attributed his own failures to comply with court orders to his legal assistant, (*see* Doc. No. 209 at 6, 8, 11), and here too counsel's attempts to avoid responsibility by placing blame on his legal assistant fall flat. As Defendants emphasize in their reply brief, Plaintiffs' counsel's repeated lack of attentiveness and care, as demonstrated by his numerous excuses, support the imposition of sanctions. (Doc. No. 247 at 4) (citing *Clark v. Horace Mann Ins. Co*., No. 2:16-cv-2252-TLN-DB, 2018 WL 5920793, at *6 (E.D. Cal. Nov. 13, 2018), *report and recommendation adopted*, 2019 WL 2160367 (E.D. Cal. Feb. 6, 2019) (recommending terminating sanctions where, among other things, attorney "offered up various excuses" for his misconduct, including "blam[ing] the failure to respond" to an order to show cause on his "assistant")); *see also Medlink Health Sols., LLC v. Maddox Def., Inc.*, No. 22-cv-1306-AGS-DEB, 2024 WL 189021, at *2 (S.D. Cal. Jan. 17, 2024) (imposing compensatory sanctions on defense attorney, who blamed his staff for his failure to appear at status conferences and meet filing deadlines, because the attorney's "obligations to make court appearances and meet filing deadlines are his responsibility, not his staff's" responsibility).

The court also ordered that "within seven (7) days from the date of entry" of the January 24, 2025 order, "Plaintiffs shall serve further responses to Defendant Frieborn's First Set of Requests for Production of Documents ("RFPs") and produce all responsive documents in their possession, custody, or control." (Doc. No. 240 at 16.) The court specified that

> Plaintiffs' further responses shall include the following information separately as to **each RFP**: (i) confirm that Plaintiffs have conducted a diligent search of their records and files, (ii) identify all responsive

> documents discovered through their search, (iii) explain, if applicable, where and why responsive documents have not been or will not be produced, and (iv) include a privilege log for any responsive documents Plaintiffs refuse to produce on the basis of privilege.

(*Id.*) To avoid any confusion, the court further warned Plaintiffs "that they must produce responsive documents by the deadline above to be in compliance with this order; Plaintiffs may not unilaterally extend that deadline." (*Id.*)

Critically, Plaintiffs do not dispute that they did not comply with these specific directives; rather, they believe—despite the clear language in the January 24, 2025 order—that they did not need to make any further production of documents because they had already done so on October 11, 2024, and therefore "complied with that aspect of the October 1, 2024 order." (Doc. No. 244 at 5.) That Plaintiffs have chosen to take this bold and baseless position strains credulity. Contrary to Plaintiffs' contention, Plaintiffs' non-compliance with the court's October 1, 2024 order was thoroughly addressed by the court in its January 24, 2025 order, which included a discussion of the inadequacy of the further responses Plaintiffs served on October 11, 2024. (*See* Doc. No. 240 at 4, n.4.) Given the court's discussion of Plaintiffs' inadequate and incomplete responses to the RFPs, and the specific directives ordering Plaintiffs to provide certain information as to each RFP, Plaintiffs' counsel's position that Plaintiffs did not need to take any further steps to respond to the RFPs is completely unreasonable. Even if Plaintiffs had a good faith belief that they had already complied with their discovery obligations and were therefore unsure what additional steps the court intended for them to take, the proper course of action would have been to seek clarification from the court, which Plaintiffs did not do.

In addition, although Plaintiffs assert that they "provided even more RFP responses on February 1, 2025" out of an abundance of caution (Doc. No. 244 at 5), those responses were untimely and again wholly insufficient. First, despite being explicitly warned that "Plaintiffs may not unilaterally extend" the seven-day deadline (Doc. No. 240 at 16), Plaintiffs served their further responses to the RFPs a day late. (Doc. No. 241-1 at 4.) Second, Plaintiffs provided supplemental responses to only 10 of the 55 RFPs and referred only to documents that had already been produced. (*See* Doc. No. 241-11 at 5.) Third, Plaintiffs did not respond at all to the

other 45 RFPs, let alone provide the specific information outlined in the court's January 24, 2025 order separately as to each RFP, as directed. (*See* Doc. No. 247 at 5.) Fourth and most importantly, despite having previously admitted that they had certain responsive documents in their possession that they had not yet produced, Plaintiffs did not produce any new documents with their February 1, 2025 supplemental responses. (Doc. Nos. 241-1 at 6–7; 247 at 7.)

In sum, Plaintiffs have failed to comply with the directives set forth in the January 24, 2025 order, despite being warned "that their failure to comply with this order will likely result in the court issuing terminating sanctions upon Defendants' request." (Doc. No. 240 at 15.)

The court finds that under these circumstances, consideration of the applicable factors weighs heavily in favor of imposing terminating sanctions and dismissing Plaintiffs' case pursuant to Rule 41(b). Given the prolonged delays caused by Plaintiffs' recalcitrance, the court finds the first and second factors of the public's interest in expeditious resolution of this litigation and the court's need to manage its docket both support imposing terminating sanctions, even though the fourth factor of public policy favoring disposition of cases on their merits weighs against dismissing this case. *See Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997) ("Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default. Therefore, it is the third and fifth factors that are decisive.") (citation omitted). As to the third factor, the court finds the risk of prejudice to Defendants weighs in favor of dismissal particularly because Plaintiffs have continually thwarted Defendants' efforts to obtain discovery through requests for production and deposition testimony. Finally, as to the fifth factor, the court finds there are no less drastic alternatives available, and dismissal of this action is the appropriate sanction. Notably, the court has already imposed monetary sanctions, both in the form of a personal sanction on Plaintiffs' counsel in the amount of $1,500.00 paid to the court (Doc. No. 209 at 14), and a compensatory sanction requiring Plaintiffs to pay Defendants' attorneys' fees and costs in connection with the motion to compel discovery in the total amount of $16,818.29. (Doc. No. 240 at 15.) Moreover, the court has explicitly warned Plaintiffs that terminating sanctions may be the consequence for their non-compliance with the court's orders. (Doc. No. 209 at 14) (explaining that the court considered terminating sanctions under Rule 41(b)

8

1  "[g]iven the egregious failures of Plaintiffs and their counsel in this case," but nevertheless

2  "afford[ed] Plaintiffs one more chance to prosecute their action"); (Doc. No. 240 at 15) (warning

3  Plaintiffs that their failure to comply with the court's order "will likely result in the court issuing

4  terminating sanctions upon Defendants' request"). Despite ultimately receiving two "final"

5  opportunities to comply with the court's orders, Plaintiffs failed to do so—even in the face of

6  terminating sanctions. In short, the court has considered and tried lesser sanctions, to no avail.

7  Plaintiffs' brazen disregard for the directives in the court's January 24, 2025 order make clear that

8  terminating sanctions are appropriate in this case.

9         Accordingly, the court will grant Defendants' motion for terminating sanctions and

10  dismiss this case.

11                              **CONCLUSION**

12        For the reasons explained above,

13    1.      Defendants' motion for terminating sanctions (Doc. No. 241) is GRANTED;

14    2.      This action is dismissed;

15    3.      The pending motions (Doc. Nos. 254, 259) are DENIED as having been rendered

16            moot by this order; and

17    4.      The Clerk of the Court is directed to close this case.

18

19

20        IT IS SO ORDERED.

21  Dated:   __**August 28, 2025**__                    _____
                                                        Dena Coggins
22                                                      United States District Judge

23

24

25

26

27

28

                                    9